Eastern District of Kentucky
F I L E D

MAR 3 1 2021

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BIZZACK CONSTRUCTION, LLC,<br><br>Plaintiffs,<br><br>V.<br><br>TRC ENGINEERS, INC. and AECOM TECHNICAL SERVICES, INC.,<br><br>Defendants. | CIVIL NO. 5:20-84-KKC<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Pursuant to 28 U.S.C. § 1404(a) Defendant AECOM Technical Services, Inc. ("AECOM") moves to transfer this action to the United States District Court for the Southern District of West Virginia, Charleston Division, arguing that such transfer is more convenient for adjudication of this case. (DE 10). AECOM also moves to dismiss Count III of Plaintiff's Complaint. (DE 21). For the reasons stated below, this Court will **deny** AECOM's motion to change venue and **deny** AECOM's motion to dismiss without prejudice, and permit the Plaintiff to amend its Complaint with allegations to support Count III.

I.

Plaintiff Bizzack Construction, LLC ("Bizzack") is a Lexington-based highway construction contractor, whose bid led to a design-build contract with the West Virginia Department of Transportation ("WVDOT"). (DE 1-1, ¶ 6). The project entailed the construction of a 14.6-mile stretch of U.S. Route 35, from WV 896 to Mason CR , in Putnam and Mason Counties located in the Southern District of West Virginia. To assist in its execution, Bizzack sought and secured the help from the Defendants for "certain design, engineering and construction inspection support services[.]" (*Id.*, ¶ 4). On July 13, 2015,

Page 1 of 9

Defendant TRC Engineers, Inc. ("TRC") entered into a consulting agreement with Bizzack. (hereinafter, the "Prime Agreement"). (DE 10-2; DE 11-1 at 2-9). TRC then entered into a subconsultant agreement with AECOM on August 6, 2015. (DE 10-3).

Largely at the center of this dispute is the applicability of the forum selection clause as it relates to AECOM's role in this litigation. AECOM argues that the Prime Agreement's forum selection clause specifically exempts AECOM because it has no bearing on AECOM's performance as defined in the Subconsultant Agreement; and further, there is no evidence that the parties intended the terms to bind AECOM. The Prime Agreement's forum selection clause at issue is the following:

> **21. Applicable Law:** This Agreement and matters connected with the performance thereof will be construed, interpreted, applied and **governed** in all respects **by the laws of the State of West Virginia.** Any **legal proceedings** in connection with the Agreement **will be brought in a court** of competent jurisdiction **within the County of Fayette, Commonwealth of Kentucky.**

(DE 10-2 at 8) (emphasis added). The agreement (in full), with all four of its attachments, comprises a total of 89 pages (DE 11-1). AECOM's scope of services is defined in the latter subset of Attachment A beginning on page 60 and ending on page 78. AECOM's participation in the project, among other things, consisted of providing geotechnical services for the design and construction of two dual bridges and five roads. AECOM was not expressly a signatory to the Prime Agreement, but instead a signatory to the subcontract between it and TRC. The subcontract (DE 10-3) contains no forum selection clause, but does contain the following clause:

> XX. COMPLIANCE WITH PRIME AGREEMENT:
>
> Subconsultant hereby agrees to abide and be bound by the terms of the Prime Agreement, which is incorporated herein by reference and which is attached to this Agreement as Exhibit B, **that are expressly applicable to the**

> **Subconsultant**, unless provided otherwise hereunder. **In the event there is a conflict** between the terms and conditions of this Agreement and the terms and condition of any other document including, without limitation, **the Prime Agreement, the terms and conditions** of the Prime Agreement **applicable to the performance of the Subconsultant's Services, in all instances, shall control and prevail.**

(DE 10-3 at 8) (emphasis added).

On February 13, 2020, Bizzack filed this action against TRC and AECOM in the Circuit Court of Fayette County, Kentucky, asserting claims of professional negligence and breach of contract arising out of the design of one of the bridges. On March 4, 2020, AECOM removed the action to this Court—with TRC's consent— on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (DE 1). AECOM's motion to change venue (DE 10) and motion to dismiss (DE 21) followed.

## II.

AECOM moves to transfer this action to the United States District Court for the Southern District of West Virginia, arguing that transfer is appropriate on the balance of convenience and the interest of justice. Mainly, AECOM argues that the forum selection clause in the Agreement between TRC and Bizzack is inapplicable as to AECOM, and that the factors under 28 U.S.C. § 1404 support transfer.

Section 1404(a) authorizes a Federal District Court to transfer a civil action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). A district court deciding a motion to transfer under a § 1404(a) "has broad discretion to grant or deny" that motion. *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir. 1994) (internal quotation marks and citation omitted). The District Court must examine a number of factors when determining whether to transfer under § 1404(a), including:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Lexel Imaging Sys., Inc. v. Video Display Corp.*, No. 5:14-CV-462-KKC, 2015 WL 403140, at *6 (E.D. Ky, Jan, 28, 2015) (citing *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F.Supp.2d 722, 729 (E.D. Mich. 2006)).

### A.

The party seeking transfer must show at the threshold that personal jurisdiction and venue would have been proper in the transferee forum. *Hoffman v. Blaski*, 363 U.S. 335, 342–43 (1960). Here, AECOM argues that the Southern District of West Virginia had jurisdiction over the matter and that venue was proper in the District (DE 10-1 at 6-7). No party has disputed this. Accordingly, upon review, the Court finds that the Complaint could have been filed initially in the United States District Court for the Southern District of West Virginia because that Court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is proper pursuant to o 28 U.S.C. § 1391(b)(2).

### B

As discussed above, courts within the Sixth Circuit have identified nine factors which should be considered when ruling upon a motion to transfer venue under section 1404(a).

**(1) the convenience of witnesses**

AECOM argues that because the employees and representatives of WVDOT "will be crucial witnesses" in this case, and they are located in the Southern District of West Virginia, that is a more convenient jurisdiction. (DE 10-1 at 7).

While this may be true, the pandemic has been instrumental in highlighting the benefits of modern technology. To the extent there is additional expense or inconvenience to any of the witnesses, this may be alleviated though video depositions, remote testimony, or other technological means.

**(2) location of relevant documents and relative ease of access to sources of proof**

This factor weighs against transfer. Again, with modern technology, most (if not all) of the relevant documents related to the project exists in an electronic format — either in original form or as a copy.

**(3) convenience of the parties**

This factor also weighs against transfer. Neither TRC nor AECOM is located in West Virginia or Kentucky. The Plaintiff is the only party located in Kentucky; and as will be discussed, Bizzack chose to litigate this in Kentucky. Whether this matter is litigated in West Virginia or Kentucky, the Court finds it will be equally inconvenient for all parties.

**(4) locus of the operative facts**

While it is clear that construction of the project —specifically, Bridge No. 1[1]— physically occurred at the job site at West Virginia, it does not appear that this case will necessitate, or otherwise require jurors to attest to the structural adequacy of the bridge. Bizzack states that the original Pier 4 of Bridge No. 1 was demolished and will not be a central focus of the litigation. (DE 11 at 12).

**(5) availability of process to compel the attendance of unwilling witnesses**

This factor weighs very little in the Court's analysis. The Federal Rules of Civil Procedure—particularly, Rule 32(a)(4)(B) and Rule 45's various subparts—provides the

---

[1] Per the Complaint, "Bridge 1 consists of a twin, north-bound and south-bound five span prestressed concrete I-beam bridge structure over Plantation Creek" in Putnam County, West Virginia. (DE 1-1, ¶ 8). Bizzack contends that "[u]nder the Agreement, AECOM was responsible for the planning and design of the construction of Bridge 1, including the evaluation, specification and authorization of materials to be used in the construction." (*Id.*)

Court with a variety of tools and options to employ in compelling the attendance of unwilling witnesses.

### (6) relative means of the parties

This factor is also given little weight. As explained in Bizzack's response, "[w]hile being publicly traded or [having] a global presence is not conclusive of financial means, it is likely that AECOM and TRC are not in a disadvantageous position" (DE 11 at 13) compared to the privately-held regional company that is Bizzack.

### (7) forum's familiarity with the governing law

While this Court may be more familiar with Kentucky law, it is common for this Court to look at the law of other jurisdictions, especially when out-of-state law is controlling pursuant to diversity jurisdiction, 28 U.S.C. § 1332.

### (8) weight accorded the plaintiff's choice of forum

The parties vehemently disagree regarding the application of the forum selection clause forum as it relates to AECOM. Both parties agree only that West Virginia law permits parties to incorporate by reference separate agreements (in whole or in part) into one agreement. *See State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 752 S.E.2d 586 (W.Va. 2013) (DE 11 at 5; DE 16 at 1). But, while Bizzack argues that the Prime Agreement is incorporated into the Subconsultant Agreement in full, since the Prime Agreement sets forth AECOM's role in the project, AECOM argues that not every clause in the Prime Agreement is incorporated into the Subcontract, especially since the Prime Agreement includes terms inapplicable to AECOM. The parties offer strong arguments on both ends.

"Though not dispositive, a forum selection clause constitutes a 'significant factor that figures centrally in [a] district court's calculus' when evaluating a discretionary transfer under § 1404(a)." *Creditors Collection Bureau, Inc. v. Access Data, Inc.*, 820 F. Supp. 311, 313 (W.D. Ky. 1993) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988)). The clause weighs heavy here; the choice of forum is abundantly clear in the Prime Agreement. And notably, TRC, who is a central party to this case, has not expressed its position in favor or against transfer.

**(9) trial efficiency and the interests of justice**

The Court has broad discretion when determining whether to transfer an action pursuant to 28 U.S.C. § 1404(a). *Phelps*, 30 F.3d at 663. The Court has carefully weighed the factors and finds that while the Plaintiff's choice of forum is generally entitled to considerable weight, that weight is strengthened in this case. The Court finds that transfer of this litigation to the United States District Court, Southern District of West Virginia, Charleston Division would be improper under the § 1404 factors. The interests of justice weigh in favor of allowing this Court to retain jurisdiction.

### III.

AECOM has also filed a motion (DE 21) to dismiss Count III of Bizzack's complaint, which asserts a breach-of-contract claim against AECOM.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570.

In its motion, AECOM argues that, while Bizzack's complaint asserts a breach of contract claim against it, the complaint does not plead the existence of a contract between AECOM and Bizzack. The complaint alleges that Bizzack entered into an agreement with TRC (DE 1-1, ¶ 4). That is the only agreement alleged in the complaint, and Bizzack does not make any allegations that would explain how AECOM is bound by that agreement.

In its response to the motion to dismiss, Bizzack argues a couple of theories as to how AECOM is bound by the agreement between Bizzack and TRC. First, it argues that AECOM is bound by the agreement because AECOM authored an attachment to the agreement in which AECOM agreed to perform work for Bizzack. Second, Bizzack argues that AECOM entered into a subconsultant agreement in which it expressly agreed to be bound by the terms of the agreement between Bizzack and TRC. Finally, Bizzack argues that, even if it did not enter into a contract with AECOM, Bizzack is a third-party beneficiary of another agreement that AECOM entered into with an unidentified third party.

Bizzack sets forth none of these allegations in the complaint. In order to state a claim for breach of contract, Bizzack must allege the existence of an agreement between it and AECOM. Bizzack may plead alternative theories for how AECOM is bound by an agreement, but it must plead at least one theory. As it stands, Count III of the complaint fails to do that. Nevertheless, given this Court's preference for deciding claims on their

merits, the Court will **deny** the motion to dismiss without prejudice and permit AECOM **14 days** to file an amended complaint that contains sufficient allegations to state a breach-of-contract claim against AECOM.

### IV.

Accordingly, for all the above reasons, the Court hereby ORDERS that:

1. Defendant AECOM's Motion to Transfer Venue (DE 10) is **denied**;
2. Defendant AECOM's Motion to Dismiss Count 3 (DE 21) is **denied without prejudice**; and
3. Plaintiff Bizzack **shall file** an amended complaint no later than **Wednesday, April 14, 2021.** Plaintiff's amendment shall set forth sufficient allegations to support Count III of the complaint. Failure to do so will result in dismissal of the claim.

Dated March 31, 2021.



Signed By:
Karen K. Caldwell
United States District Judge